# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| MARISA STREIT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17-4225-CV-WJE |
| | ) |
| | ) |
| STEVEN HALVERSON, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Pending before the Court is Defendant Steven Halverson's *Daubert* motion to exclude the testimony of Plaintiff's expert witness, Stan Smith, Ph.D., regarding Plaintiff's damages relating to "impairment to wages and benefits" and loss of household services. (Doc. 35 at 1). Pending also is Defendant's suggestions in support of the *Daubert* motion. (Doc. 36). Plaintiff Marisa Streit has filed her Memorandum in Opposition to Defendant's motion (Doc. 41), to which the Defendant has replied (Doc. 45). This issue is now ripe for consideration. For the reasons that follow, Defendants' *Daubert* motion will be granted in part and denied in part.

## I. Background

This is a personal injury action involving injuries sustained by Plaintiff Marisa Streit as a result of a boating accident in Camden County, Missouri. The Court has subject matter jurisdiction under 28 U.S.C. § 1332 and personal jurisdiction over the parties pursuant to R.S.Mo. §§ 506.330 and 506.500.

Plaintiff alleges that on or about September 4, 2016, she was a passenger on a 26-foot boat owned and operated by Defendant Steven Halverson in the Lake of the Ozarks. (Doc. 1). Plaintiff became airborne when the boat encountered large wakes and sustained an injury to her spine when she landed. *Id.* The claim is brought under a negligence theory. Plaintiff claims Defendant breached his duty of care by failing to keep a lookout, operating the boat while distracted and/or impaired, and driving at an excessive speed. *Id.*

Plaintiff initiated the instant suit on November 14, 2017. *Id.* Defendant moved to exclude the opinions of Plaintiff's expert, Dr. Smith, on July 1, 2018. (Doc. 35). Defendant alleges Dr.

Smith's opinions concerning Plaintiff's damages relating to "impairment to wages and benefits" and loss of household services do not meet the standards for admissibility. *Id.*

## II. Law

To determine the admissibility of expert testimony, the Court must apply the criteria outlined in Federal Rule of Evidence 702 and the test set forth by the Supreme Court of the United States in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Daubert* reiterates the point stating, "the trial judge must determine . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and . . . properly can be applied to the facts in issue." 509 U.S. at 592-93. Under *Daubert,* "scientific knowledge" requires more than speculation and subjective belief; it implies validity, reliability, and relevance. *See id.*; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999) ("Rules 702 and 703 grant all expert witnesses, not just 'scientific' ones, testimonial latitude unavailable to other witnesses on the assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.").

Generally, expert testimony should be liberally admitted and its credibility tested through the adversarial process rather than excluded initially. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (citing *U.S. v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011)); *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006); *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001); *Archer Daniels Midland Co. v. Aon Risk Servs.*, 356 F.3d 850, 858 (8th Cir. 2004). "[T]he rejection of expert testimony is the exception rather than the rule." *Robinson*, 447 F.3d at 1100. If the expert's opinion is "so fundamentally unsupported that

it can offer no assistance to the jury," however, it can properly be excluded. *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988).

The question of whether expert testimony qualifies as scientific knowledge useful to the fact-finders is left to the discretion of the trial judge. *See Daubert*, 509 U.S. at 589; *see also Bradshaw v. FFE Transp. Servs., Inc.*, 715 F.3d 1104, 1107 (8th Cir. 2013). In fulfilling the "gatekeeper" role, the Court considers many factors to determine the reliability and relevance of expert testimony:

> (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community.

*Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012) (citing *Daubert*, 509 U.S. at 593-94). This "reliability and relevancy test" is employed primarily to prevent "dubious scientific testimony" from swaying the jury. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011).

In fields where data, principles, methods, etc. are uncertain, the question becomes whether the expert has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire Co.*, 526 U.S. at 149 (quoting *Daubert*, 509 U.S. at 592). If the information used in reaching a certain conclusion is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject," the testimony may be admissible even if it contains otherwise inadmissible hearsay evidence. Fed. R. Evid. 703; *Arkwright Mutual Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997). At a minimum, the proponent of the expert testimony must prove the testimony rests on a sound foundation and is characterized by a "level of intellectual rigor" accepted in the profession. *Kumho Tire Co.*, 526 U.S. at 152.

### III. Analysis

Dr. Stan Smith, a forensic economist and financial consultant of over forty years, is offered as one of Plaintiff's experts. Defendant asserts Dr. Smith should be excluded because (1) he is not qualified to opine on Plaintiff's disability, and (2) because his calculations are not based on sound economic principles, rely on a single article, fail to account for Plaintiff's current

employment, and result in duplicative damages. (Doc. 36). Plaintiff, in opposition, argues Defendant mischaracterized Dr. Smith's work and resulting conclusions. (Doc. 41). According to Plaintiff, Dr. Smith did not attempt to classify Plaintiff's injury, his reliance on a U.S. Census Bureau article is appropriate, and his calculations address Plaintiff's ongoing employment and earning capacity. *Id.* For the reasons that follow, the Court will grant Defendant's motion to exclude Dr. Smith's opinions on Plaintiff's disability and deny Defendant's motion to exclude his testimony about damages resulting from lost wages and lost household services.

### A. Opinions on Plaintiff's "Disabling Injury"

Defendant contends Dr. Smith, as a forensic economist with no medical training, is not qualified to provide opinions regarding Plaintiff's disability. The Court finds that Dr. Smith is not a medical expert and therefore is precluded from providing any medical opinions in this case. Dr. Smith has extensive experience working as an economic and financial consultant, but medical opinions are beyond the scope of his knowledge. Therefore, he is qualified to testify from an economics perspective, but is not qualified to testify about medical issues and will be barred from doing so.

The Court finds Dr. Smith's characterization of Plaintiff's spine injury as "disabling" to be a medical opinion and the Court will preclude him from such a characterization. Similarly, the Court will bar Dr. Smith from suggesting that a disability can be inferred from Plaintiff's "back or spine problems." Dr. Smith's opinion about the nature of Plaintiff's injuries should be stricken, but the fact that the existence of a disability *could* result in a net lost earning capacity is precisely the type of opinion on which an economist may opine in a personal injury case.

In *Graham v. Noeuy*, the defendant argued that the plaintiff's expert testimony regarding lost earning capacity and loss of household services should be excluded. *See Graham v. Noeuy*, No. 2:15-CV-04155-NKL, 2016 WL 6404091 (W.D. Mo. Oct. 27, 2016). Specifically, the defendant contended that because the projections of future economic loss were based solely on the expert's assumption that the plaintiff would never fully recover, they were inadmissible. *Id.* at *2. The Court held the expert's testimony *was* admissible because it was not "fundamentally unsupported" and the defendant could cross examine the expert regarding the factual basis for his calculations and opinions.

In the case at bar, "what Dr. Smith has done is conduct an analysis based on an assumption, as experts are allowed, that there will be evidence of disability." (Doc. 41). Under *Graham*, such testimony is permitted. Therefore, while Dr. Smith cannot offer medical opinions, i.e., stating that Plaintiff *is* disabled, he can make assumptions based on medical evidence in this case to develop his financial opinions. For example, Dr. Smith could opine that *if* Plaintiff is disabled, based on the jury's analysis of her injuries, she would experience $X of lost earnings and an X% reduction in employment opportunities *based on economic principles.*

As long as Dr. Smith does not purport to provide a medical opinion of disability, he will be permitted to "calculate[] what Plaintiff's damages are *if* the jury determines she has a disabling injury." (Doc. 41).

### B. Opinions on "Impairments to Wages and Benefits"

Dr. Smith is Plaintiff's economics and finance expert. Defendant asserts that Dr. Smith's testimony should be excluded because (1) his calculations of Plaintiff's lost earning capacity and wage impairment fail to account for her current employment, misinterpret available data, and rely on a single source, and (2) his estimates of lost household services and household management are duplicative. (Doc. 36). Plaintiff contends that Dr. Smith's testimony and opinions meet the reliability test outlined in *Daubert*, and exclusion in this case is not warranted. (Doc. 41). Here, the Court finds that Dr. Smith is qualified as an expert and that his opinions are sufficiently reliable.

The Court finds Dr. Smith to be a well-qualified expert in the fields of economics and finance. Dr. Smith has a Ph.D. in economics. He has been involved in research and education in the field of forensic economics for over forty years. He is President of Smith Economics Group, Ltd., former Vice President of the National Association of Forensic Economics, ten-year member of the Board of Editors of the Journal of Forensic Economics, and the creator and founder of Ibbotson Associates' Stock, Bonds, Bills, and Inflation Yearbook. He has published scholarly articles and textbooks on the subject of forensic economics and taught the first course in forensic economics nationwide. Dr. Smith has specialized knowledge, skill, and training in the field of economics, and has been recognized as an economics expert in many courts throughout the country for more than three decades.

The Court further concludes Dr. Smith's expert testimony on impairments to wages and benefits is sufficiently reliable. In formulating his opinions, Dr. Smith reviewed all of the relevant materials including the complaint, Plaintiff's taxes from the years 2013 and 2015, the deposition of Plaintiff from March 29, 2018, a Life Care Plan created by Dr. Roger Huckfeldt, MD, an informational interview with Plaintiff's mother Patty Streit, and the case information form. Dr. Smith then calculated Plaintiff's remaining life expectancy using data from the National Center for Health Statistics (National Vital Statistics Reports, 2017) and used statistical averages published by the Bureau of Labor Statistics and the Federal Reserve to determine wage growth, interest rates, and consumer prices over the relevant time period.

Defendant takes issue with Dr. Smith's use of a U.S. Census Bureau article as a basis for estimating Plaintiff's potential lost earning capacity, but this Court finds the article to be a reliable source for that purpose. Economists are permitted to give testimony "to show that raises in income or promotions would most probably occur." *Johnson v. Serra*, 521 F.2d 1289, 1296 (8th Cir. 1975). Though "submission to the scrutiny of the scientific community . . . increases the likelihood that substantive flaws in methodology will be detected," peer review is not a requirement for admissibility. *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 297 (8th Cir. 1996). Furthermore, with regard to Plaintiff's ongoing employment, lost earning capacity and lost earnings are not synonymous. *Graham*, 2016 WL 6404091, at *2.

A recent Eighth Circuit Case, *Eckerberg v. Inter-State Studio & Publ'g Co.*, addressed a similar issue. 860 F.3d 1079 (8th Cir. 2017). Plaintiff Aaron Eckerberg, a member of the United States Marine Corp., brought a damages claim for injuries he sustained when an Inter-State vehicle crashed into his truck after running a stop sign. *Id.* at 1082. After testimony from an expert economist who estimated Mr. Eckerberg's future lost earnings to be between $1.3 and $3.3 million, the jury returned a verdict of $4.5 million. *Id.* at 1083. Inter-State appealed, alleging Mr. Eckerberg's continued employability rendered the award "excessive" with regard to lost wages, thereby warranting remittitur. *Id.* at 1084. "Inter-State argue[d] that 'undeployable' is not equivalent to 'unemployable.'" *Id.* at 1088. On appeal, the Eighth Circuit affirmed the damage award, finding it to be "fair and reasonable" and supported by the evidence. *Id.* at 1088. Specifically, the Court held:

> [Inter-State's] argument, however, ignores the jury's option to credit testimony from an economist that established large economic losses even if Eckerberg remained employed but undeployable with the Marines. Further, the economist

testified that Eckerberg's inability to fly eliminated his most lucrative career opportunity as a private-sector helicopter pilot, which was worth over $4 million. Even if Eckerberg remained employed by the Marines until retirement, the injuries sustained in the accident have substantially impaired his potential for career advancement. The economist estimated this loss to be worth up to $2.35 million. The jury had sufficient basis to find substantial economic losses. "The jury was entitled to determine what weight, if any, to give any of the expert testimony offered by the parties." *Niemiec v. Union Pac. R.R. Co.*, 449 F.3d 854, 859 (8th Cir. 2006).

*Id.*

Defendant's arguments in the case at bar are strikingly similar to those raised in *Eckerberg*. Defendant states that Dr. Smith's calculations do not appropriately account for Plaintiff's ongoing, full-time employment in her field of choice. (Doc. 36). This Court, however, notes Plaintiff does not have to be unemployed to incur economic damages. If Defendant would like to explore or expose the alleged overlap, "[defendant] may cross-examine [Dr. Smith] as to the distinction between loss of earnings and lost earning capacity." *Graham*, 2016 WL 6404091, at *2. The same applies to the overlap Defendant alleges between "household services" and "household management." Equally, Defendant may cross-examine Dr. Smith and other witnesses on deficiencies in the record to support Dr. Smith's assumptions of Plaintiff's disability. "Vigorous cross-examination, presentation of the contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 915 (8th Cir. 2017) (quoting *Daubert*, 509 U.S. at 596).

In fact, the entirety of Defendant's arguments go more to the weight of Dr. Smith's testimony than its admissibility. *Robinson*, 447 F.3d at 1100 ("Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility."). The Court bears in mind that the test of reliability is "flexible," and the Court has "considerable leeway" in determining the reliability of expert testimony. *Kumho Tire*, 526 U.S. at 152. At trial, Defendant will be given ample opportunity to demonstrate why Dr. Smith's opinions and testimony should not be credited or given substantial weight. *See Johnson* 754 F.3d at 562 (quoting *Daubert*, 509 U.S. at 590, 596) ("As long as the expert's . . . testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset."). Any assumptions made by an economist may impact the weight of the evidence as

evaluated by the jury, but are not sufficient basis to exclude the testimony altogether. *Vanskike v. ACF Indus., Inc.*, 665 F.2d 188, 211–12 (8th Cir. 1981). Having so found, the Court will allow Dr. Smith to testify about damages in this case.

### IV. Conclusion

Defendant's *Daubert* motion to exclude Stan Smith, Ph.D., is GRANTED in part and DENIED in part as set forth herein. Dr. Smith is an economist, not a medical expert; he cannot offer medical opinions, but can provide estimates of future losses based on educated assumptions and economic principles.

Accordingly,

IT IS, THEREFORE, ORDERED.

Dated this 8th day of August, 2018, at Jefferson City, Missouri.

Willie J. Epps, Jr.
United States Magistrate Judge